EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES v. MILLER.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1911.)

No. 3,428.

1. BANKRUPTCY (§ 143*)—ADMINISTRATION OF ESTATE—PROPERTY VESTING IN TRUSTEE.

A policy of insurance on the life of a bankrupt passes to the trustee as of the date of the adjudication of bankruptcy, though the policy was then current and the cash surrender value did not mature till a subsequent default in payment of the annual premium.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

2. BANKRUPTCY (§ 143*)—ADMINISTRATION OF ESTATE—PROPERTY VESTING IN TRUSTEE.

Where an insurance company, knowing that insured had been adjudicated a bankrupt, made a loan to him on his surrender of the policy, it is liable to the trustee in bankruptcy after lapse of the policy for its surrender value, notwithstanding the trustee's inability to surrender the policy as required by its terms as a condition precedent to the company's liability for the surrender value.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

3. BANKRUPTCY (§ 143*)—ADMINISTRATION OF ESTATE—PROPERTY VESTING IN TRUSTEE.

To entitle a trustee in bankruptcy to recover the cash surrender value of a policy of insurance, it is not necessary that the contract of insurance expressly provide for a cash surrender value, but it is sufficient if the company has a recognized rule of paying a surrender value or is willing to pay the surrender value.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

4. BANKRUPTCY (§ 143*)—ADMINISTRATION OF ESTATE—PROPERTY VESTING IN TRUSTEE.

Where an insurance policy was payable to insured, if living at its maturity, and the beneficiaries were to derive no benefits except in case of his death before the maturity, and by default in the payment of the premiums all interest of the beneficiaries ceased, it was not necessary for the trustee in bankruptcy of the insured to nominate a new beneficiary, but he might recover the cash surrender value of the policy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by Robert J. Miller, trustee in bankruptcy of Olive De Lisle, against the Equitable Life Assurance Society of the United States. From a judgment for plaintiff, defendant brings error. Affirmed.

Edward S. Robert and David Goldsmith (Robert & Robert, on the brief), for plaintiff in error.

Morris G. Levinson, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. In this case the trustee of the estate of Olive De Lisle, bankrupt, brought his action against the Equitable Life Assurance Society to recover the alleged cash surrender value of three policies of life insurance. Various defenses were interposed, chiefly to the effect that the policies had no cash surrender value at the time that insured was adjudged a bankrupt; that in no event did the policies have a cash surrender value during the currency thereof, but only after default in payment; and that such cash surrender value was payable only on surrender of the policies duly indorsed.

From the facts of the case it appears that on May 9, 1908, Olive De Lisle was duly adjudged a bankrupt, and Robert J. Miller was appointed trustee of his estate. On December 28, 1898, the Equitable Life Assurance Society insured the life of Olive De Lisle in the sum of $1,000, payable to his wife, Ida De Lisle, and to his sons, Norval and Richard De Lisle, equally, survivors or survivor, should none survive, then to the insured's executor, administrator, or assigns, subject to the right of the insured to change the beneficiary. Such policy of insurance was issued upon condition that insured should pay annually in advance the sum of $42.79, on the 19th day of December, in every year, for a period of 20 years, or until the prior death of the insured. The policy contained the following provision:

"This policy shall lapse, and, together with all premiums paid thereon shall forfeit to the society. on the nonpayment of any premium when due; excepting that upon due surrender of this policy, within six months after said lapse, providing premiums have been duly paid for at least three full years of assurance, the society will give the assured the choice of either a cash value or nonparticipating paid-up life policy, at the date of lapse, as fixed in the following Table of Surrender Values, the amount of which shall be based on the number of full years' premiums that have been paid; and if this policy should be continued beyond the period covered by the said table it will be entitled to a cash value equal to the full reserve upon due surrender of this policy on any anniversary of its register date of issue. In consideration of the premises it is understood and agreed that all right or claim for temporary assurance or any other surrender value than that provided in this contract, is hereby waived and relinquished, whether required by the statute of any state or not."

The Table of Surrender Values, indorsed on the policy, stated such cash surrender value, at the end of the tenth year, to be the sum of $255. Bankrupt, in December, 1907, paid the annual premium which extended the life of the policy to December, 1908. The premium falling due December 19, 1908, was not paid. Plaintiff, as trustee, on the

4th day of March, 1909, brought this action to recover from the insurance company the cash value thereof.

The contract of insurance expressly provided that, upon the lapse of the policy, after at least three years' premiums had been paid, the company would give to the insured (not the beneficiaries) the choice of either a cash value or nonparticipating paid-up life policy. There can be no doubt that this policy passed to the trustee in bankruptcy as of May 9, 1908, notwithstanding the policy was then current and the cash surrender value did not mature until the subsequent default in payment of the annual premium. Hiscock v. Mertens, 205 U. S. 202–214, 27 Sup. Ct. 488, 51 L. Ed. 771. The provision for payment required a surrender of the policy; but it appears that, after the adjudication in bankruptcy, to wit, on the 19th day of May, 1908, bankrupt surrendered the policy to the insurance company and received from the company a loan upon said policy, and that the policy is now held by the insurance company to secure said loan. The insurance company had, at the time of making the loan, knowledge that the insured had been adjudged a bankrupt. The insurance company was therefore aware at the time of making the loan that all of bankrupt's interest in the policy had passed to the trustee in bankruptcy. Under such state of facts, the policy, being in the possession of the company, acquired by it wrongfully as to the trustee, it cannot insist upon the trustee making a surrender which he is prevented from doing by the act of the company, and the trustee was entitled to recover the cash surrender value thereof.

The second policy of insurance was issued June 30, 1899, for the sum of $2,000. It was the same in form, and contained the same provisions as the policy before mentioned, so the facts hereinbefore stated, relative to the first policy, apply as to this second policy, excepting that the cash surrender value was the sum of $402; and plaintiff, as trustee, was entitled to recover that amount, with interest.

A third policy was issued under date of October 18, 1900, for the sum of $5,000. This policy was payable to the wife of the insured and his surviving children equally; should none survive, then to the insured's executors, administrators, or assigns, or to the insured, in case he should be living on the 8th day of October, 1920. The contract contained no provision for a surrender value, but provided that, in case the policy should lapse for nonpayment of any premium when due, if the premiums had been duly paid for at least three years, the company would issue to the insured a nonparticipating paid-up policy for a certain proportionate amount of the original policy. It also provided for a loan to the insured of a sum which should not exceed two-thirds of the reserve thereof. The contract also provided that insured might change the beneficiary or beneficiaries at any time during the continuance of the policy by filing with the company a written request, duly acknowledged, accompanied by the policy; such change to take effect upon the indorsement of the same upon the policy by the company.

In the case of Hiscock v. Mertens, supra, it was held not essential that the contract of insurance should expressly provide for a cash surrender value; it was sufficient if the company had a recognized rule of paying a surrender value or was willing to pay the surrender value.

The evidence shows considerable correspondence between the attorney for the trustee and the insurance company, from which it appears that the insurance company recognized that the policy in question had a cash surrender value, pursuant, we think, to the general policy and custom of the company in respect to such policies.

This policy was payable to insured (bankrupt), if he was living at the maturity of the policy October 8, 1920. The beneficiaries were to derive no benefits under the policy except in case of the death of the insured before the maturity of the policy. By default in the payment of the premiums all interest of the beneficiaries ceased, and the trustee was the party entitled to receive the cash surrender value of the policy. Hence it was unnecessary for the bankrupt or trustee to nominate a new beneficiary. This policy, with the others, was subsequent to the adjudication in bankruptcy, assigned and delivered to the insurance company to secure a loan. And the trustee, for the reasons given with respect to the other policies, is relieved from the necessity of surrendering it to the company.

For the foregoing reasons, the judgment is affirmed.